FILE COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACCURACY IN MEDIA,<br>    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br>    Defendant. | )<br>)<br>)<br>)  Civil Action<br>)  No. 97-2107 (GK)<br>)<br>)<br>) |

FILED
MAR 31 1999
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

Plaintiff Accuracy in Media brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, <u>as amended by</u> Electronic Freedom of Information Act Amendments of 1996, 5. U.S.C. § 552, seeking to compel disclosure of records from the Federal Bureau of Investigation ("FBI"). This matter is before the Court on Defendant's Motion for Summary Judgment [#10]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons discussed below, Defendant's Motion for Summary Judgment [#10] **is granted in part and denied in part**.

I.    BACKGROUND[1]

On June 6, 1997, Plaintiff Accuracy in Media submitted a FOIA request to the FBI seeking all records and material relating to the

---

[1] Pursuant to Local Rule 108(h), "[i]n determining a motion for summary judgement, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Thus, the Court takes these facts from Defendant's Statement of Undisputed Material Facts. Unless otherwise noted, the Court states only uncontroverted facts.

1

death of former Deputy White House Counsel Vincent Foster. Not having heard anything regarding its request within the statutory time limit by which Defendant had to respond, Plaintiff filed this lawsuit on September 12, 1997.

On November 6, 1997, the FBI released to Plaintiff 15 pages of pre-processed information concerning the death of Mr. Foster. At that time, the FBI also informed Plaintiff that it had located 337 documents responsive to its FOIA request, but because of a backlog in the Research Management Unit, there would be a delay in processing Plaintiff's request.

In processing Plaintiff's request, the FBI searched its Central Records System ("CRS") and located six "main" files which listed "Vincent Foster" as the main subject.[2] Three of the files concerned the Office of the Independent Counsel's ("OIC") ongoing investigation into the death of Mr. Foster, and one of the files contained information gathered during Mr. Foster's background check (and thus contained no information about his death). Of the two remaining files, the earlier file (numbered "72-WF-187908") had been consolidated into the latter file (numbered "175-WF-187743"), and this latter file was found to contain 337 pages.

On March 25, 1998, the FBI provided Plaintiff with 297 pages of information, 33 of which were released in their entirety, and 264 of which were released in redacted form. On April 16, 1998, the FBI released another 15 pages, some of which was previously-

---

[2] The FBI noted that it did not search "cross-referenced" files, since such files are not likely to contain any information on Mr. Foster's death.

released material being re-released with fewer redactions. On April 29, 1998, the FBI released 6 more pages in their entirety, which had previously been withheld. As of the end of April, Plaintiff had received 304 pages of material, much of it in redacted form, and the OIC had directed the FBI to withhold the remaining 33 pages, as it pertained to their ongoing investigation.

After Plaintiff filed its Opposition to Defendant's Motion for Summary Judgment, Defendant discovered that it had "inadvertently" neglected to consolidate almost half of the 72-WF-187908 file into the 175-WF-187743 file. On June 5, 1998, the FBI released an additional 240 pages in their entirety, 10 pages in redacted form, and withheld 16 pages per instructions from the OIC. All in all, out of 603 total pages in the fully consolidated file, Plaintiff received 554 in their entirety or in redacted form, and 49 pages were withheld in their entirety per instructions from the OIC.

II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, a motion for summary judgement shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgement as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgement, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

## III. ANALYSIS

FOIA reflects "a general philosophy of full agency disclosure", Dep't of Air Force v. Rose, 425 U.S. 352, 360-361 (1973), in order "to facilitate public access to Government documents". United States Dept. of State v. Ray, 502 U.S. 164, 173 (1991)(citing John Doe Agency v. John Doe Corp., 493 U.S. 146, 151 (1989)). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. Id. at 361. The Act "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. United States Dep't of Defense, 79 F.3d 1172, 1176 (D.C. Cir. 1996)(citing 5 U.S.C. § 552(a), (b)).

Plaintiff first argues that the privacy interests of the individuals whose names and information were withheld are outweighed by the public's interest in monitoring the government's administration of justice in a case which has received great media attention. Plaintiff also argues that in camera review of the redactions and withholdings made by the FBI is necessary, because "neither Plaintiff or [sic] the Court has seen the unredacted versions to verify the accuracy of Defendant's claim and nothing obligates Plaintiff or the Court to blindly accept Defendant's claim". Pl.'s Statement of Genuine Issues in Opp'n to Mot. for Summ. J. at 1. Plaintiff finally argues that discovery is necessary to determine whether the FBI has actually produced all documents responsive to its FOIA request. Defendants respond that their search was reasonable and adequate, and that the supporting

declarations satisfy their burden of proving that the search was adequate and the redactions and withholdings properly made.

  A. Government's Withholdings Under FOIA Exemptions

Defendant moves for summary judgment on the basis that it adequately justified the exemptions it claims through the four declarations submitted by Shirley L. Davis of the FBI, and Julie A. Corcoran of the OIC. These declarations explain, in detail, the withholding of information under Exemptions 2, 7(A), 7(C), and 7(D). The FBI withheld an informant symbol number and informant information under Exemptions 2 and 7(D), arguing that the numbers themselves are administrative tools used by the FBI to protect the actual identity of informers, and that release of such numbers, or any other informant information, would seriously infringe on the FBI's ability to conduct thorough and effective investigations. The FBI persuasively argues that if such information were routinely released, over time an informant may be identified by revealing the informant's connections with dates, times, places, events, or names connected with certain cases.

The FBI also withheld information under Exemption 7(A), which permits withholding information compiled for law enforcement purposes. The OIC directed those withholdings because it believed that release of the material would interfere with its ongoing investigation into Mr. Foster's death. The Declaration of Julie A. Corcoran states in detail the problems that would arise should such information be released: witnesses could modify, tailor or construct their testimony after a review of the records, they could

ensure their testimony did not vary from the records, they could create explanations for why their testimony varied from the testimony of others, persons unrelated to the investigation could fabricate claims of personal knowledge, and so on. Disclosure of such information would "deprive the OIC of the critical opportunity to learn of a witness's initial reactions to the evidence and statements of other witnesses." Decl. of Julie A. Corcoran at ¶ 15.

Finally, the FBI withheld information under Exemption 7(C), which permits the withholding of personal information in law enforcement records.[3] The FBI argues that this information was withheld to prevent the unwarranted invasion of personal privacy of the people mentioned in the file, namely FBI special agents and personnel staff, third parties interviewed or mentioned, non-FBI federal law enforcement officers and other federal employees, and

---

[3] The Declaration of Sherry L. Davis, aptly identifies some of the privacy interests at stake, should the information withheld be released:

a) Public identification of these FBI employees could subject them to harassment in the conduct of their official duties and in their private lives;
b) Public identification could enable members of the news media and public citizens to seek out FBI employees who had been directly, or merely tangentially involved in the investigation into the death of Mr. Foster to question them about it, or to obtain names of other employees involved in the investigation;
c) Public identification could lead to the attempted compromise of employees; and
d) Public identification could result in numerous attempts to involve FBI employees in civil disputes, especially in cases where a person lodges a criminal complaint with the intention of using the results of the FBI investigation for his or her civil litigation purposes. Decl. of Sherry L. Davis at 18-19.

6

local police department employees. The FBI correctly notes that such categorical withholding, under Exemption 7(C), of information identifying third parties is justified by the traditional recognition of the strong privacy interests protecting law enforcement records. SafeCard Serv. v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The court in SafeCard also noted that disclosure of such information is allowed only if necessary to confirm or refute compelling evidence of agency misconduct or illegal activity. Id. Plaintiff has made no showing, let alone a showing based on compelling evidence, of agency misconduct or illegal activity. As Sherry L. Davis states in her declaration, the names of the FBI employees withheld "consist of only lower-level FBI employees, those below the policy-making level, whose identities are generally withheld from the public. None of these employees have been shown to have been involved in any official misconduct concerning the matters at issue." Decl. of Sherry L. Davis at 19.

The FBI also justifies its withholding under Exemption 7(C) based on the probable harassment and stigma that would be suffered by any individuals mentioned whose names were disclosed. Our Court of Appeals has recognized that the mere mention of an individual's name in a law enforcement file "will engender comment and speculation and carries a stigmatizing connotation." Fitzgibbon v. C.I.A., 911 F.2d 755, 767 (D.C. Cir. 1990)(internal citation omitted). In another FOIA case seeking records relating to Mr. Foster's death, the court in Wichlacz v. United States Dep't of

7

Interior, 938 F. Supp. 325, 334 (E.D. Va. 1996), aff'd per curiam, 114 F.3d 1178 (4th Cir. 1997) noted:

> It is no understatement to say that this media scrutiny presents a concomitantly great risk of the invasion of the privacy interests of any person identified, even in a remote way, with the investigation of Foster's death and the related Madison Guaranty matters. It is not unreasonable to expect that disclosure of the identities of the psychiatrists, the law enforcement officers, and the other individuals would subject them to an onslaught of media attention, even though those persons have nothing of substance to provide. Indeed, it is foreseeable that reporters and camera crews would besiege their places of work and their homes and would follow them, pressing microphones in their faces as they walk the public streets and as they attempt to go about their daily lives. It certainly is not out of the question that these people, and their families, would be subject to investigation into their own lives by the media.

In response, Plaintiff offers only unsupported arguments that the privacy interests of the individuals whose names and information were withheld are outweighed by the public's interest in monitoring the manner in which the government investigated Mr. Foster's death. The only authority Plaintiff cites for its argument that the public interest outweighs these individuals' privacy interests is Outlaw v. United States Dep't of the Army, 815 F. Supp. 505 (D.D.C. 1993). As the FBI points out, the instant case is clearly distinguishable from Outlaw. In Outlaw, the court found that there were no privacy interests likely to be offended, since the information sought related to a crime committed twenty-five years prior to plaintiff's FOIA request. In this case, however, the event in question happened approximately five years ago, and is of such national concern that should the names of any of the individuals connected to the case be revealed, these

individuals would undoubtedly suffer a great and unwarranted invasion of their privacy.

In light of the overwhelming evidence that disclosure of the information withheld under Exemption 7(C) would create a substantial and unwarranted invasion of the privacy of those individuals, Defendant's Motion for Summary Judgment on this issue is granted.

B.  **In Camera Review**

If an agency decides to withhold or redact portions of a requested document, "the agency bears the burden before the trial court of proving the applicability of claimed statutory exemptions." Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998)(citing 5 U.S.C. § 552(a)(4)(b)). The agency can discharge this burden by submitting "a declaration from an appropriately qualified official attesting to the basis for the agency's decision." Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998). In order for such a declaration to be adequate, it must be detailed, specific, be submitted in good faith, and account for any contrary record evidence. Id. In camera review of material is generally appropriate only where the agency repeatedly fails "to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption." Spirko v. United States Postal Serv., 147 F.3d 992, 997 (D.C. Cir. 1998). Indeed, our Court of Appeals has concluded that "though permitted under FOIA and sometimes necessary, [in camera review] is generally disfavored". Schiller v. NLRB, 964 F.2d 1205, 1209 (D.C. Cir. 1992).

Defendant argues that it adequately justified the exemptions it claims through the four declarations submitted by Sherry L. Davis of the FBI, and Julie A. Corcoran of the OIC. In response, Plaintiff states that "nothing obligates . . . the Court to blindly accept Defendant's claim". Pl.'s Statement of Genuine Issues in Opp'n to Mot. for Summ. J. at 1. Campbell, however, clearly states that as long as the agency's declarations are adequate, the agency's obligations under FOIA are satisfied. Campbell, 164 F.3d at 30. Plaintiff has not even alleged that the declarations are inadequate, let alone offered any substantive arguments to show they are inadequate. Since Plaintiff has set forth no evidence suggesting the need for an in camera review of the redacted and withheld documents, Defendant's Motion for Summary Judgment as to this issue is granted.

B.  Adequacy of Search

FOIA requires an agency responding to a FOIA request to conduct a reasonable search using methods which can be reasonably expected to produce the information requested. Campbell, 164 F.3d at 27. The agency cannot limit itself to one method or system of searching for documents if the requesting party has "established a sufficient predicate to justify searching for a particular type of record." Id. at 28. The burden of proof is on the agency to show that its search was reasonably calculated to uncover all relevant documents. Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). In meeting this burden, the agency may submit affidavits or declarations that explain, in reasonable detail, the

10

scope and method of the agency's search; "in the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

The FBI has submitted two very detailed declarations by Sherry L. Davis, attesting to the thoroughness of the FBI's search for information responsive to Plaintiff's request.[4] Plaintiff's Opposition, on the other hand, alleges that the FBI's search was inadequate because there are so many questions left unanswered that "common sense" informs us that the FBI should have produced additional material during its investigation. However, Plaintiff's naked allegations that other records "probably exist", that it is "inconceivable" that additional documents were not generated, and that it is "reasonable to conclude" that further investigations were made, are nothing more than speculation. "Mere speculation that as yet uncovered documents may exist does not undermine the

---

[4] The Court is greatly concerned by the fact that Defendant failed to locate <u>almost half</u> of the file in question until one year after Plaintiff had filed its FOIA request with the agency. However, in light of the Second Declaration of Sherry L. Davis, attesting to the inadvertency of its failure to locate the rest of the file, and in light of the Plaintiff's almost complete failure to provide any evidence for why this Court should not credit Ms. Davis' Declaration, the Court will not rely on this inadvertency to find that the FBI's search was unreasonable. See Perry, 684 F.2d at 125 ("however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

However, it should be clear that incidents of this kind do not enhance the credibility of the agency, especially in the many FOIA cases which it litigates in this court.

finding that the agency conducted a reasonable search for them." SafeCard, 926 F.2d at 1201.

Plaintiff offers only two real pieces of evidence to challenge the declarations submitted by the FBI. First, Plaintiff notes that the documents it received from the FBI make no mention of any photographs taken at the scene of Mr. Foster's death, yet in the published reports of the Senate Hearings on Mr. Foster's death, there is a reproduction of an FBI "Receipt for Property Received/Returned/Released/Seized" showing that some photographs were turned over to the FBI. Hearings Relating to Madison Guaranty S&L and the Whitewater Development Corporation— Washington, DC Phase Before the Comm. on Banking, Housing, and Urban Affairs, 103rd Cong. 2112 (1994). Second, Plaintiff notes that despite the fact that a document from the FBI Laboratory, referring to a "fingerprint card", was also included in this Senate hearing report, no mention of such a fingerprint card was found in the material released to Plaintiff. Id. at 1923-24.

In light of the fact that Defendant has failed to address these discrepancies, the Court will remand this case to the agency for the purposes of addressing only these two issues. Because Plaintiff has failed to offer any other evidence showing that the FBI's search was unreasonable, Defendant's Motion for Summary Judgment is **granted in part** as to the adequateness of the rest of its search relating to Plaintiff's FOIA request.

## IV. CONCLUSION

The tragic suicide of Vincent Foster has been investigated and scrutinized by the executive branch, the legislative branch, and an army of journalists. Plaintiff has filed this lawsuit in an effort to unearth further documents that it believes still exist about Mr. Foster's death. However, instead of raising statutory arguments under the Freedom of Information Act--the governing statute in this case--Plaintiff has submitted briefs which are nothing more than speculation, innuendo, and sheer conjecture. Indeed, at points, the briefs simply pose a series of provocative questions which read more like a conspiracy theorist's broadside than a serious, or rigorous, FOIA analysis.

In short, Plaintiff has failed to offer any evidence to support its claim that discovery and <u>in camera</u> review are necessary in this case. However, in light of the two actual discrepancies identified by Plaintiff with respect to the photographs and fingerprint card, this case will be remanded to the agency for further search for such material, or any information regarding such material. For these reasons, Defendant's Motion for Summary Judgment [#10] **is granted in part and denied in part.** An Order will issue with this Opinion.

_March 31, 1999_
Date

_Gladys Kessler_
Gladys Kessler
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ACCURACY IN MEDIA, )
    Plaintiff, )
)
v. ) Civil Action
) No. 97-2107 (GK)
FEDERAL BUREAU OF INVESTIGATION, )
    Defendant. )
)

FILED
MAR 31 1999
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ORDER

Plaintiff Accuracy in Media brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended by Electronic Freedom of Information Act Amendments of 1996, 5. U.S.C. § 552 (Supp. 1997), seeking to compel disclosure of records from the Federal Bureau of Investigation ("FBI"). This matter is before the Court on Defendant's Motion for Summary Judgment [#10].

Upon consideration of the Motion, Opposition, Reply, and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is this 31st day of March, 1999, hereby

ORDERED, that Defendant's Motion for Summary Judgment [#10] is granted in part and denied in part; it is further

ORDERED, that this case is remanded to the Federal Bureau of Investigation for further search for any photographs or fingerprint cards, or any information regarding such material, relating to the death of Vincent Foster.

March 31, 1999
Date

Gladys Kessler
United States District Judge