Not Reported in F.Supp.2d, 1999 WL 1032814 (D.D.C.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Robert B. BURKE, Plaintiff,
v.
UNITED STATES DEPARTMENT OF JUSTICE, Bureau of Alcohol, Tobacco & Firearms et al., Defendants.
No. CIV.A. 96-1739(RMU).
Sept. 30, 1999.

Mr. Robert B. Burke, Beaumont Federal Penitentiary, Beaumont, TX, Plaintiff pro se.

Lisa Barsoomian, AUSA, Civil Division, U.S. Attorney's Office, Washington, D.C., Counsel for Defendants Bureau of Alcohol Tobacco & Firearms and the Federal Bureau of Investigation (all other defendants having been previously dismissed from this case).

MEMORANDUM OPINION

Granting the FBI's Motion for Summary Judgment

URBINA, District J.

I. INTRODUCTION

*1 The plaintiff *pro se,* Mr. Robert B. Burke, brings this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.,* and the Privacy Act, 5 U.S.C. § 552a ("PA"), seeking production of information currently held by the defendants. There are two defendants remaining in this action: the United States Department of Justice / Federal Bureau of Investigation ("FBI") and the U.S. Department of the Treasury's Bureau of Alcohol, Tobacco and Firearms ("ATF").[FN1] This matter comes before the court on the defendants' motion for summary judgment as to the FBI. For the reasons which follow, this court will grant summary judgment to the FBI. Thus, only the ATF remains as a party defendant in this matter.

> FN1. By Memorandum Opinion and Order dated March 31, 1998, this court granted summary judgment to three defendants: the Drug Enforcement Agency ("DEA"), United States Postal Service ("USPS") and Executive Office for U.S. Attorneys ("EOUSA").
>
> By that same order, the court denied as moot the ATF's motion to dismiss on the ground that Mr. Burke had failed to exhaust his administrative remedies, because Mr. Burke paid the requisite fees for ATF to process his FOIA request after ATF filed the motion. The court also denied the FBI's motion to stay the case.
>
> Lastly, the court denied as moot the plaintiff's motion to require the dismissed defendants to produce an itemized index of the withheld documents in accordance with the requirements of *Vaughn v.. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973). The court denied without prejudice the motion to compel the FBI and ATF to produce a *Vaughn* index, because the resolution of dispositive motions which might be filed by FBI and ATF could make it unnecessary for those agencies to provide *Vaughn* indices.

## II. Background

*Mr. Burke's Conviction.* In August 1993, the plaintiff, Mr. Robert Burke, was convicted in the United States District Court for the Eastern District of Pennsylvania on a number of felony counts arising out of his role in the murder of a federal grand jury witness named Donna Willard. Ms. Willard had been scheduled to appear before a federal grand jury which was investigating insurance fraud involving Mr. Burke, then an attorney at law, and some of his clients. The counts of conviction included violations of 18 U.S.C. § 1962 (RICO), § 1512 (murder of a witness), § 1858 (murder for hire) and § 841(i) (arson). In April 1996, the plaintiff sought post conviction relief pursuant to 28 U.S.C. § 2255. The relief was denied.

*Mr. Burke's FOIA Request to the FBI.* In connection with his conviction, the plaintiff propounded FOIA requests on several federal agencies. In February 1996, Mr. Burke served the FBI with 98 separate information requests pertaining to himself and 96 other individuals.[FN2] See Declaration of Linda L. Kloss dated April 28, 1997 ("Kloss Dec.").

> FN2. Two of the plaintiff's 98 requests to the FBI (# C-58 and # C-98) were identical and were requests for records pertaining to the plaintiff himself. Each of the other 96 requests seeks information concerning a different third party. See Kloss Dec. ¶ 2.

*The FBI's Response to Mr. Burke's Request for Information Regarding Himself.* By letter dated February 27, 1996, the FBI advised Mr. Burke that he needed to submit proof of death or privacy waivers from each of the third parties about whom he requested information. See Kloss Dec. ¶ 3. Mr. Burke does *not* dispute that he failed to provide proof of death or a privacy waiver for any of the 96 individuals covered by his FOIA requests to the FBI. In the absence of such waivers or proof of death, the FBI refused to search for documents concerning those third parties and refused to confirm or deny whether such documents existed. The FBI's refusal to search was pursuant to a policy which calls for it to refuse to confirm or deny the existence of third-party documents unless one of four conditions is met: (1) the subject of the request is deceased; (2) the subject of the request has provided a notarized declaration authorizing the release of the requested information to the requestor; (3) the DOJ has officially acknowledged the existence of records pertaining to the third party in question; or (4) the public interest in disclosure outweighs the third parties' privacy interests. See Kloss Dec. ¶ 13. The FBI states that, in its experience, this policy is justified by the fact that "merely affirming that an individual is mentioned in FBI records is private information and the inference drawn from such a fact can have an embarrassing or stigmatizing effect." Id. ¶ 11. The FBI also states that "the neither confirm nor deny response provides the best and most complete protection to those individuals concerning whom records are sought by third-party FOIA requesters." Id. ¶ 12.

**\*2** Because Mr. Burke failed to provide proof that the third parties were deceased or had waived their right to privacy, the first and second exceptions to the policy did not apply. Because DOJ had never acknowledged the existence of documents regarding these third parties, the third exception did not apply. Accordingly, the FBI states, it assessed whether or not the fourth exception applied, i.e., whether the public interest in disclosure outweighed the third parties' right to privacy. The FBI concluded that there was no public interest in disclosure to outweigh the third parties' right to privacy. Thus, the FBI declined to search for third-party documents, because "merely to admit the existence of any responsive records would clearly constitute an unwarranted invasion of personal privacy." See Kloss Dec. ¶ 14.

For the reasons set forth below, the court concludes that the FBI was legally justified in declining to search for information responsive to Mr. Burke's third-party requests.

*The FBI's Response to Mr. Burke's Request for Information Regarding Himself*

The FBI did agree, however, to search for records responsive to Mr. Burke's request for information about himself. To determine whether it had such documents, the FBI searched its Central Records

System (CRS).[FN3] *See* Hodes Dec. dated March 8, 1999 at 5 (attached to FBI's Reply in Support of Mot. for Summ. J.) ("3/8/99 Hodes Dec."). The CRS contains security, administrative, applicant, criminal, personnel and other files compiled for law-enforcement purposes. *See id.* ¶ 4. The files in the CRS are numbered sequentially and are broken down by subject matter. A file's subject matter may be an individual, organization, company, publication, activity or foreign intelligence matter. *Id.* To conduct the search of the CRS, the FBI used the CRS's General Indices. The General Indices, which are automated, consist of an index on various subjects, including the names of individuals and organizations. *Id.*

> FN3. The FBI's administrative procedures for processing and responding to FOIA requests are set forth at Kloss Dec. ¶¶ 15-20.

The FBI's search of the CRS yielded one file, FBI Headquarters ("FBIHQ") File # 72-PH-59715.[FN4] The file is entitled "Mitchell Abramowitz et al, Murder of a Federal Grand Jury Witness, 3/6/90; Donna Willard-Deceased-Victim; Obstruction of Justice" and contains documents dated from April 8, 1991 through January 10, 1995. *See id.* The file contains information compiled about Mr. Burke and others during an investigation initiated after Ms. Willard was murdered on March 6, 1990. The investigation file contains 44 pages. *See* 3/8/99 Hodes Dec. at 6.

> FN4. The FBI conducted two searches of the CRS. After the first search, by letter dated July 5, 1996, the FBI informed the plaintiff that a search of the CRS indices revealed no records concerning him. The FBI realized, however, that a clerical error had been committed during its first search for documents concerning the plaintiff. Accordingly, the FBI conducted a second search for records pertaining to the plaintiff and discovered the investigatory file discussed above. *See* Kloss Dec. ¶¶ 7, 9.

The FBI processed a total of 83 pages: the 44-page FBIHQ file and 39 pages forwarded from the U.S. Postal Service. In June 1997, the FBI released 60 of the 83 pages in part and withheld 15 pages in their entirety; 8 pages were redundant of other documents produced. *See* Declaration of Scott A. Hodes dated June 15, 1998 ("6/15/98 Hodes Dec.") ¶¶ 6, 8. As justification for redacting these documents, the FBI cites FOIA exemptions (b)(7)(C-F).

**\*3** Dissatisfied that the FBI withheld some of the responsive information in its possession, the plaintiff filed this action for declaratory and injunctive relief pursuant to 5 U.S.C. § 552.[FN5] For the reasons set forth below, the court concludes that the FBI has disclosed the information to which Mr. Burke is entitled.

> FN5. Mr. Burke filed an administrative appeal in March 1996, but DOJ's Office of Information and Privacy advised him, by letter dated October 18, 1996, that his appeal had been closed in light of his pending litigation. *See id.* ¶¶ 4, 6, 8.

### III. LEGAL STANDARD

In determining whether summary judgment is appropriate in FOIA cases, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). Summary judgment is appropriate where "there are no genuine issues as to any material fact" and "the moving party is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). In FOIA cases, a court "may grant summary judgment solely on the basis of agency affidavits if they are clear, specific and reasonably detailed, and there is no contradictory evidence on the record." *Hayden v. National Sec. Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979). The defendant agency has the burden of justifying its non-disclosure of requested documents. *See DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755 (1989); *see also National Cable Television Ass'n v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973).

## IV. ANALYSIS

### A. Defendant FBI's Motion for Summary Judgment

#### 1. The FBI's Refusal to Search for Third-Party Documents

##### a. The Privacy Act and Third-Party Records

As discussed above, the FBI declined to search for documents responsive to Mr. Burke's requests for information regarding third parties, and it declined to reveal whether or not such documents existed with regard to the particular third parties. For the reasons which follow, the court concludes that the FBI action with regard to Mr. Burke's third-party requests was lawful.

The Privacy Act provides, in pertinent part,

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be-

\* \* \*

(2) required under section 552 of this title [i.e., FOIA].

5 U.S.C. § 552a(b). In other words, the Privacy Act prohibits the FBI from disclosing information about a living third party without a written privacy waiver, *unless* FOIA requires disclosure. The FBI investigative file concerning Mr. Burke is covered by this provision because it qualifies as a "record ... contained in a system of records" as that term is defined by the Privacy Act. FN6 Thus, because Mr. Burke did not provide privacy waivers from the third parties, the FBI could not lawfully release third-party documents unless FOIA required their release.

> FN6. The Privacy Act defines "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency ... that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual ...." 5 U.S.C. § 522a(a)(4). The Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual ...." 5 U.S.C. § 522a(a)(5). The court finds that the FBI's Central Records System, from which Mr. Burke's investigative file was retrieved, is a system of records as defined by the Privacy Act.

##### b. Whether the Third-Party Records Were Exempt Under FOIA

The question, then, is whether FOIA required the FBI to search for and produce the third-party documents requested by Mr. Burke. For the reasons which follow, the court concludes that the third-party records were exempt from production under FOIA's personal-privacy exemption, 5 U.S.C. 522(b)(7)(C) ("Exemption 7C").

###### i. *The Third Parties' Privacy Interest.*

**\*4** Under Exemption 7C, records or information compiled for law-enforcement purposes are protected from disclosure whenever such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." FN7 5 U.S.C. § 522(b)(7)(C). In determining whether a privacy interest exists in records related to law-enforcement agencies, it is well established that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C.Cir.1990) (quoting Branch v. FBI, 658 F.Supp. 204, 209 (D.D.C.1987)); accord Congressional News Service v. DOJ, 438 F.Supp. 538, 541 (D.D.C.1977) ("an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo"). The fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed. See Weisberg v. DOJ, 745 F.2d 1476, 1491 (D.C.Cir.1984).

> FN7. The Freedom of Information Reform Act of 1986 broadened the protection afforded by Exemption 7C by lowering the standard from information which "would" constitute an invasion of personal privacy, to information which "could reasonably be expected to" invade personal privacy. Pub.L. No. 99-570, § 1802, 100 Stat. 3207, 3207-48; see Stone v. FBI, 727 F.Supp. 662, 665 (D.D.C.1990) (stating that 1986 FOIA amendments "eased the burden of an agency claiming that exemption [7C]"); Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act 9-12 (Dec.1987).

### ii. Balancing Public Interest in Disclosure Against Third Parties' Privacy Interests.

The court balances the third parties' privacy interests against any public interest which disclosure would serve. See Schiffer, 78 F.3d at 1410. In balancing these interests, the courts examine whether disclosure would serve FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties...." DOJ v. Reporters Committee, 489 U.S. 749, 773 (1989). Mr. Burke has not demonstrated, nor does the record disclose any "public interest" which favors disclosure of the information withheld. There is no evidence to indicate that disclosure of such information would help the public to shed light on the FBI's performance of its statutory duties or on the government's operations. Cf. Safecard Services v. SEC, 926 F.2d 1197, 1206 (D.C. Cir.1991) (the identities of individuals who appear in law enforcement files would virtually never be "very probative of an agency's behavior or performance"). The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction. See Landano v. DOJ, 956 F.2d 422, 430 (3d Cir.1991) (no public interest in disclosure of identities of individuals involved in murder investigation because such release would not shed light on how the FBI fulfills its responsibilities); Thomas, 928 F.Supp. at 251 (prisoner's interest in information to challenge conviction "does not raise a FOIA-recognized interest that should be weighed against the subject's privacy interests"). In short, because the court does not discern any public interest weighing in favor of disclosure of the third-party documents, the third parties' privacy interest prevails. See Ajluni, 947 F.Supp. at 605 ("In the absence of any strong countervailing public interest in disclosure, the privacy interests of the [third parties] must prevail").

### iii. A "Glomar" Response to a FOIA Request for Third-Party Information.

**\*5** As discussed above, the FBI has a policy under which it responds to FOIA requests for records concerning third parties by refusing to confirm or deny whether such records exist. See Dunkelberger v. DOJ, 906 F.2d 779, 780 (D.C.Cir.1990) (upholding FBI's refusal to confirm or deny whether it had records on administrative disciplinary action against named agent). Such a response is deemed necessary because, as discussed previously, members of the public may draw adverse inferences from the mere fact that an individual is mentioned in the investigative files of a criminal law-enforcement agency. See McNamera, 974 F.Supp. at 957-60 (allowing FBI and INTERPOL to refuse to confirm or deny whether they had investigatory files on individuals who had "great privacy interest" in not being associated with stigma of investigation). Such a neither-confirm-nor-deny response is

referred to as a "Glomar" response. FN8

> FN8. The response is named after a secret U.S. government ocean vessel, the Hughes Glomar Explorer, which was the subject of records sought in a FOIA request, see *Phillippi v. CIA,* 546 F.2d 1009 (D.C. Cir.1976).

### iv. *Restrictions on the Use of the Glomar Response*

An agency should be permitted to employ privacy "Glomarization," however, only to the extent necessary to protect the fact that an individual is mentioned in law-enforcement investigatory records. As to the portion of a FOIA request which seeks investigative law-enforcement files, the agency may simply "Glomarize" (i.e., refuse to confirm or deny whether such files exist as to the third party). *See, e.g., Enzinna v. DOJ,* 1997 WL 404327, *2 (D.C.Cir.1997). When a FOIA request seeks more than just law-enforcement files, however, the agency must take a "bifurcated" approach. As to the portion of the request seeking investigative law-enforcement files, the agency may simply assert a categorical Glomar response. As to the portion of the request seeking files other than investigative law-enforcement files, however, the agency must demonstrate that it conducted an adequate search and properly withheld information from the third-party document to protect their privacy. *See Nation Magazine v. Customs Service,* 71 F.3d 885 (D.C.Cir.1995).

### v. *Appropriateness of Glomar Response Here*

The appropriateness of the FBI's Glomar response, then, turns on whether Mr. Burke's FOIA request sought investigative law-enforcement files about the third parties or other kinds of files. Mr. Burke's third-party FOIA requests all used the same form. That form sought, in pertinent part,

Systems, computers, data banks files, documents, Agents, U.S. Attorney's and Assistant U.S. Attorney's notes, Deals and/or Agreement, Dossers [sic], tapes and/or other Recording [sic], Transcripts, Reports, Statements [or] Memorandums of Any Agent or Representative of your Agency [and] *any and all other Investigative Records Compiled for or by Law Enforcement* [concerning or mentioning the named individual].

In light of the plain language of Mr. Burke's FOIA request and the context in which he filed those requests, the court finds that his requests specifically and exclusively sought *investigative records compiled for purposes of law enforcement* which mention the third parties. Accordingly, the FBI was not required to bifurcate its response. Thus, the court concludes that the FBI acted lawfully in refusing to confirm or deny the existence of investigative law-enforcement records related to the third parties, protecting the privacy of the third parties as contemplated by Exemption 7C. *See Reporters' Committee,* 489 U.S. at 775 (upholding FBI's refusal to confirm or deny whether it maintained "rap sheet" on third party); *Antonelli,* 721 F.2d at 617; *Ray v. DOJ,* 558 F.Supp. 226, 228-29 (D.D.C.1982) (request by convicted killer of the Rev. Dr. Martin Luther King, Jr., seeking files on his former attorney or a certain Congressman), *aff'd,* 720 F.2d 216 (D.C.Cir.1983) (unpub., table); *Early v. Office of Prof. Responsibility,* No. 95-254, slip op. at 3 (D.D.C. April 30, 1996) (neither-confirm-nor-deny response appropriate concerning possible complaints against or investigations of judge and three named federal employees was proper absent public interest in disclosure); *Durham,* No. 91-2334, slip op. at 4-5 (D.D.C. Nov. 25, 1992) (request by prisoner seeking file on possible suspect in murder investigation).

**\*6** For the foregoing reasons, the court will grant summary judgment to the FBI as to Mr. Burke's requests for investigative records relating to third parties. The court next inquires whether the FBI responded lawfully to Mr. Burke's request for information concerning *himself.*

### 2. *FOIA Exemption 7C*

#### a. Law-Enforcement Records and Personal Privacy

The FBI invokes 5 U.S.C. § 522(b)(7)(C) ("Exemption 7C") to justify its redaction or withholding of information from its documents which concern Mr. Burke. Under Exemption 7C, records compiled for law-enforcement purposes are protected from disclosure whenever such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

#### b. Information Withheld Pursuant to Exemption 7C

The court has carefully reviewed the FBI's FOIA production to identify every instance where the FBI has withheld information pursuant to Exemption 7C and ascertain the precise ground asserted for each instance. The FBI invokes Exemption 7C as its justification for redacting information from FBIHQ file pages 1, 3, 5, 7, 9, 11, 13, 14, 17, 19, 21, 26-33, 35, 37-43, and 45.[FN9] See 6/15/98 Hodes Dec. at 6, 7-8. Specifically, the FBI invokes Exemption 7C-1 to redact the names and identifying information of FBI Personnel who were involved in the investigation.[FN10] Id. at 6, 9-12. The FBI invokes Exemption 7C-2 to redact names and identifying information concerning third parties "who are of investigative interest to the FBI" (such as dates of birth, addresses and social security numbers).[FN11] Id. at 6, 12-13.

> FN9. The FBIHQ file does not have cumulative page numbers. These page numbers refer to the pages as they are ordered in Exhibit B to the defendant FBI's motion for summary judgment (not including the cover sheet labeled "Exhibit B").
>
> FN10. The FBI hand-wrote "b7C-1" at each place where it redacted information identifying agents. For redactions of the FBIHQ file, see Mot. for Summ. J., Ex. B, pp. 1, 3, 5, 7, 9, 11, 13, 17, 19, 21, 26-31, 35, 37, 39, 41 and 43. For b7C-1 redactions of the Postal Service file, see id. at Postal Service File pp. 1, 4, 11, 14, 16, 18, 20 and 23.
>
> FN11. The FBI hand-wrote "b7C-2" at each place where it redacted information from the FBIHQ file regarding subjects of the investigation. See Mot. for Summ. J., Ex. B, pp. 1, 3, 5, 7, 9, 11, 14, 17, 19, 29, 37-43 and 45. For b7C-2 redactions of the Postal Service file, see id. at Postal Service File pp. 6, 11, 14, 16, 18, 20, 22 and 23.

The FBI also invokes Exemption 7C-3 in order to keep confidential "names and/or identifying information concerning third parties who provide information to the FBI."[FN12] Id. at 6, 13-16. The FBI next invokes Exemption 7C-4 to keep confidential "names and/or identifying information concerning third parties merely mentioned" in Mr. Burke's file.[FN13] Id. at 6, 16-17.

> FN12. The FBI hand-wrote "b7C-3" at each place where it redacted information from the FBIHQ file which could identify third parties who provided information to the FBI. See Mot. for Summ. J., Ex. B, pp. 27, 29, 32, 37, 38 and 41. For b7C-3 redactions of the Postal Service file, see id. at Postal Service File pp. 1 & 4.
>
> FN13. The FBI hand-wrote "b7C-4" at each place where it redacted information concerning third parties who were merely mentioned in the FBIHQ file. See Mot. for Summ. J., Ex. B, pp. 30 and 43. For b7C-4 redactions of the Postal Service file, see id. at Postal Service File pp. 1, 4, 16, 18, 20, 22 and 23.

The FBI invokes Exemption 7C-5 to keep confidential names and identifying information of Philadelphia police officers."[FN14] Id. at 6, 17. Lastly, the FBI invokes Exemption 7C-6 to keep confidential the names and identifying data of non-FBI federal employees."[FN15] Id. at 6, 18-19.

FN14. The FBI hand-wrote "b7C-5" at each place where it redacted the names of Philadelphia police officers (who were involved in the investigation) from the FBIHQ file. *See* Mot. for Summ. J., Ex. B, pp. 28-33 and 35. For b7C-5 redactions of the Postal Service file, *see id.* at Postal Service File pp. 3, 11, 14, 18, 20 and 23.

FN15. The FBI hand-wrote "b7C-6" at the one place where it redacted information from the FBIHQ file which could identify non-FBI Federal Government employees. *See* Mot. for Summ. J., Ex. B, p. 7. For b7C-6 redactions of the Postal Service file, *see id.* at Postal Service File pp. 13, 14, 16, 18, 20 and 23.

c. Applicability of Exemption 7C

As a threshold matter, Mr. Burke does not dispute that the documents he seeks relate to matters which were compiled for law-enforcement purposes, specifically documents that were used to prosecute him for various offenses. In determining whether a privacy interest exists in records related to law-enforcement agencies, it is well established that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C.Cir.1990) (quoting *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C.1987)). The fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed. *Weisberg v. DOJ*, 745 F.2d 1476, 1491 (D.C.Cir.1984).

*7 Privacy interests must also be balanced against any public interest which disclosure would serve. *See DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989). In balancing these interests, the courts examine whether disclosure would serve FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties...." *Id.* Mr. Burke has not demonstrated, nor does the record disclose any "public interest" which favors disclosure of the information withheld. There is no evidence to indicate that disclosure of such information would help the public to shed light on the FBI's performance of its statutory duties or on the government's operations. Therefore, the court concludes the FBI properly withheld information pursuant to FOIA Exemption 7C, because there is no public interest in disclosure to outweigh the privacy rights of those mentioned in documents concerning Mr. Burke.

2. *FOIA Exemption 7D*

a. Confidential Source Material Exempt Under 7D

The FBI invokes Exemption 7D of FOIA to justify its withholding or redaction of portions of its documents which concern Mr. Burke. Under Exemption 7D, an agency may withhold

records or information compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source- including a state, local, or foreign agency or authority or any private institution which furnished information on a confidential basis-and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation ... information furnished by a confidential source.

5 U.S.C. § 522(b)(7)(D). What constitutes a "confidential" source has been interpreted broadly. The requirement that the source be "confidential" signifies only that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others. *See Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575-76 (D.C.Cir.1990).

To determine whether information qualifies for nondisclosure under Exemption 7D, the "question is not whether the requested document is of the type that the agency usually treats as confidential, but

whether the particular source spoke with an understanding that the communication would remain confidential." *Landano v. DOJ,* 508 U.S. at 172; *see also Crooker v. IRS,* No. 94-755, slip op. (D.D.C. April 27, 1995) ("Exemption 7D deals with the source and not the content of the information").

### b. Information Withheld Pursuant to Exemption 7(D)

The court has carefully reviewed the FBI's FOIA production to identify every instance where the FBI has withheld information pursuant to Exemption 7D and ascertain the precise ground asserted for each instance. Generally, the FBI invokes Exemption 7D in order to protect "confidential source material." *See* 6/15/98 Hodes Dec. at 6, 19-22. Specifically, the FBI invokes Exemptions 7D-1 [FN16] and 7D-2 [FN17] to protect "names and identifying information concerning and information provided by and/or pertaining to" confidential informants under an express grant of confidentiality and third parties interviewed, respectively. *Id.* at 6, 22-24.

> FN16. The FBI hand-wrote "b7D-1" at each place where it redacted information from the FBIHQ file regarding confidential sources who were informants. *See* Mot. for Summ. J., Ex. B, pp. 27, 31, 37-38 and 41-43. The FBI did not make any b7D-1 redactions of the Postal Service file.
>
> FN17. The FBI hand-wrote "b7D-2" at each place where it redacted information regarding confidential sources who were interviewed by law enforcement. *See* Mot. for Summ. J., Ex. B, pp. 29-32, 38-39, and 42-44. For b7D-2 redactions of the Postal Service file, *see id.* at Postal Service File pp. 1, 3, 4, 6, 11, 13, 14, 16, 18, 20 and 22.

### c. Applicability of Exemption 7(D)

**\*8** The FBI states that informants and other sources provided information to assist the investigation into Mr. Burke and others with an express assurance of confidentiality. *See* Mot. for Summ. J. at 6; 6/15/98 Hodes Dec. ¶ 35. Even without relying on this statement, the court notes that an *implied* assurance of confidentiality may be readily inferred from the circumstances in which the sources provided information to law enforcement here. In determining whether to infer an assurance of confidentiality, the Supreme Court has held that the court may consider "the character of the crime at issue and the source's relation to the crime ...." *Landano,* 113 S.Ct. at 2023. In light of the grave, violent and planned nature of the offense for which the FBI investigated Mr. Burke and his co-subjects-murder, use of interstate facilities to commit murder for hire, conspiracy to murder a federal witness and arson-it is reasonable to infer that the sources whose identifying information is redacted under 7D provided information to the FBI with the understanding that their identities (and identifying information) would be strictly confidential. Accordingly, the court concludes the FBI properly invoked Exemption 7D to protect confidential sources and interviewees in its redaction of the FBIHQ and USPS files.

### 3. *FOIA Exemption 7E*

The FBI invokes Exemption 7E to withhold information on FBI Form FD-515 [FN18] which could reveal the incidence and manner of use of various investigative techniques and the FBI's assessment of the techniques' relative effectiveness in the investigation. Under Exemption 7E, an agency is entitled to withhold investigative records compiled for law-enforcement purposes to the extent that disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions ... [and] could reasonably be expected to risk circumvention of the law." [FN19] *See* 6/15/98 Hodes Dec. at 6, 24-25. *See* Mot. for Summ. J., Ex. B, pp. 1, 3, 5, 7, 9, 11, 17, 19. Exemption 7E does not require the FBI to show that disclosure of the redacted techniques and ratings would cause any particular harm or risk of circumvention of the law. *See Coleman v. FBI,* No. 89-2773, slip. op. at 25 (D.D.C. Dec. 10, 1991), *summarily aff'd,* 1992 WL 373976 (D.C.Cir.1992).

> FN18. The Form FD-515 is an "accomplishment report" submitted at various stages of an investigation to report events such as an arrest or the recovery of stolen property. *See* Mot. for Summ. J. at 24.
>
> FN19. The FBI hand-wrote "b7E" at the places where it redacted information from the FBIHQ file regarding investigative techniques. *See* Mot. for Summ. J., Ex. B, pp. 1, 3, 5, 7, 9, 11, 17, 19. The FBI did not make any b7E redactions of the Postal Service file.

The court has reviewed each of the eight Forms FD-515 on which the FBI invoked Exemption 7E and finds that in each case the FBI redacted comments or numbers which noted the use and rated the efficacy of various investigative techniques: e.g., Technique # 11-Informant Information, Technique # 15-Photographic Coverage, Technique # 19-Surveillance, Technique # 22-Telephone Toll Rec[ord]s, etc. The court finds that the FBI's ratings of such investigative techniques are precisely the type of information meant to be protected by Exemption 7E. Accordingly, the court concludes that the FBI properly invoked Exemption 7E in redacting the documents which it produced to Mr. Burke. Had the FBI not redacted that information, Mr. Burke and other potential and actual criminals might have used the information to develop countermeasures against the FBI's investigative techniques.

### 4. *FOIA Exemption 7F: Personal Safety*

**\*9** The FBI invokes Exemption 7F to protect the names and identifying data concerning any individual "which if disclosed could result in the individual's personal safety and/or life being placed in jeopardy." Exemption 7F may be invoked to protect persons who are not law-enforcement personnel or government employees. *See, e.g., Russell v. Barr,* No. 92-2546, slip op. at 11-12 (D.D.C. Aug. 28, 1998) (protecting identities of individuals who cooperated in investigation and prosecution involving spousal murder when agency demonstrated the plaintiff's reputation for violent behavior).[FN20]

> FN20. For b7F redactions of the FBIHQ file, *see* Mot. for Summ. J., Ex. B, at pp. 1, 3, 5, 7, 9, 11, 13, 17, 19, 21, 24, 26-33, 35, 37-39 and 41-44. For b7F redactions of the Postal Service file, *see id.* at Postal Service pp. 1-6 and 11-23.

For the reasons set forth in the discussion of implied assurance of confidentiality, the court finds well-founded the FBI's apprehension that disclosing information identifying its agents, other agencies' personnel and sources could expose those individuals to violent retaliation. *See, e.g., Albuquerque Pub. Co. v. DOJ,* 726 F.Supp. 851, 858 (D.D.C.1989); *Nunez v. DEA,* 497 F.Supp. 209, 212 (S.D.N.Y.1980). Accordingly, the court concludes that the FBI properly invoked Exemption 7F to redact the documents which it produced to Mr. Burke.

### V. CONCLUSION

For the foregoing reasons, the court concludes that the defendant Federal Bureau of Investigation is entitled to summary judgment.

An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is contemporaneously executed and issued this 30th day of September, 1999.

### ORDER

#### Granting the FBI's Motion for Summary Judgment

For the reasons set forth in this court's contemporaneously executed and issued Memorandum Opinion,

It is this 30th day of September 1999,

ORDERED that the motion of the defendant Federal Bureau of Investigation for summary judgment shall be and hereby is GRANTED; and it is

FURTHER ORDERED that the complaint shall be and hereby is DISMISSED in its entirety WITH PREJUDICE as to the Federal Bureau of Investigation.

SO ORDERED.

D.D.C.,1999.
Burke v. U.S. Department of Justice
Not Reported in F.Supp.2d, 1999 WL 1032814 (D.D.C.)


Motions, Pleadings and Filings (Back to top)

- 1:96cv01739 (Docket) (Jul. 25, 1996)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.