UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFREY JAMES MASTERS,

           Plaintiff,

   v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

           Defendants.

Civil Action No. 04-2274 (JGP)

**MEMORANDUM OPINION and ORDER**

     This matter is before the Court on defendants' motion for summary judgment. Having considered the motion, plaintiff's opposition, and the record of this case, the Court will grant the motion in part and deny the motion in part without prejudice.

                   I.  BACKGROUND

     In May 2004, plaintiff submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") a request for information pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552. Amd. Compl. at 1-2.[1] Specifically, plaintiff requested:

> Any disiplinary [sic] sanctions and related personell [sic] file entrys [sic] that pertain to Eric J. Degree and Larry Priester, Special Agents of the Bureau of Alcohol, Tobacco and Firearms, as well as Special Agent John Paul all of the Atlanta, Georgia field office; All policy on collecting, preserving, chain of custody and distruction [sic] of crime scene evidence, especially that of DNA evidence, and training

---

[1] The Court granted plaintiff's "Motion to Supplement and Amend Pleading" [Dkt. #9] by minute entry order on February 23, 2005, and designates this document plaintiff's Amended Complaint ("Amd. Compl.").

1

> manuals of how to recognize DNA at the crime scene; Any and all documents, records, information that any part thereof your agency has or had in its possession that is in any way connected to, related to, or even remotely in reference to [plaintiff's] name.

Defendants' Motion for Summary Judgment ("Defs.' Mot."), Declaration of Averill P. Graham ("Graham Decl."), Ex. A (May 3, 2004 FOIA Request). Plaintiff also requested a waiver of fees associated with the processing of the request. *Id.* at 2. The BATFE denied the request for a fee waiver, noted the need for privacy waivers from the individuals named in the FOIA request, and sought additional information to assist staff in searching for responsive records. Graham Decl. ¶ 4 & Ex. B (May 12, 2004 letter from M. Blevins, Disclosure Specialist, regarding Request No. 04-1411).

Plaintiff submitted a modified and expanded FOIA request. Amd. Compl. at 2; Graham Decl. ¶ 5 & Ex. C (May 17, 2004 FOIA Request). He described at length the date, place, and circumstances under which he came into contact with BATFE agents, identified the agents by name and described their respective roles in the investigation. *See* Graham Decl., Ex. C. He indicated that the "case is mostly titled 'Myranda Robinson' this is the victim, now [plaintiff's] present wife since Sept. 2001." *Id.* at 3. The BATFE granted the request in part, and notified plaintiff of its intention to release all disclosable materials as soon as possible, given the agency's staffing shortage. *Id.*, Ex. D (June 11, 2004 letter from M.R. LaBrie, Disclosure Specialist, regarding Request No. 04-1513). When plaintiff did not receive a timely response, he pursued an appeal to the Justice Department's Office of Information and Privacy ("OIP"). *Id.* ¶ 9 & Ex. G (August 25, 2004 letter to OIP). OIP declined to rule on the appeal because the BATFE had not yet acted on his request. *Id.* ¶ 10 & Ex. H (November 17, 2004 letter from R.L. Huff, Co-

Director, OIP).

The BATFE located 260 pages of records responsive to plaintiff's FOIA request.[2] Of these 260 pages, the BATFE released 12 pages in full, released 188 pages in part, and withheld 60 pages in full. Graham Decl. ¶ 11 & Ex. I (November 18, 2004 letter from M.R. LaBrie, Disclosure Specialist). The agency made two additional disclosures after plaintiff filed this civil action. *Id.* ¶ 13. It located 174 pages of records (10 documents) pertaining to policies or procedures for collection of crime scene evidence, and, of these records, released one page in full, released 11 pages in part, and withheld in full 162 pages (4 documents). *Id.* & Ex. J (November 17, 2005 letter from M.R. LaBrie, Team Leader, Disclosure Division, Ref. No. 100060). Upon receipt of a privacy waiver from Myranda Robinson, the BATFE released another 105 pages of records.[3] *Id.* ¶ 14 & Ex. K (January 17, 2006 letter from P.J. Chisholm, Senior Disclosure Specialist, Ref. No. 100060).

In this action, plaintiff demands the immediate release in full of all requested records.

## II.  DISCUSSION

### *A. Summary Judgment Standard*

The Court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the

---

[2]  Of these 260 pages, 60 pages were duplicates. Graham Decl. ¶ 11 n.1.

[3]  Plaintiff submitted Ms. Robinson's privacy waiver as an exhibit to his "Motion to Supplement and Amend Pleading." Graham Decl. ¶ 14.

absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true, unless the opposing party submits his own affidavits or documentary evidence that contradict the movant's assertions. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact with regard to the agency's compliance with the FOIA. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), *reh'g denied*, 763 F.2d 1436 (D.C. Cir. 1985)). The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."[4] *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Securities & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting

---

[4] In support of its motion, defendants submit the declaration of Averill P. Graham, Chief, Disclosure Division, BATFE. Graham Decl. ¶ 1. Among other duties, she receives, reviews and processes FOIA and Privacy Act requests to the BATFE, initiates searches for responsive records, and supervises the determination of what records should be disclosed. *Id.* Ms. Graham personally is familiar with the agency's procedures for processing FOIA requests generally, and with the processing of plaintiff's FOIA requests. *Id.* ¶ 2.

*Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

B.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information).  The agency bears the burden of showing that its search was calculated to uncover all relevant documents.  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id*. at 127.  If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d at 542.

The BATFE's search for responsive records begins with a query of the Treasury Enforcement Communications System (TECS), a computerized system which is used "to identify individuals and businesses suspected of or involved in violation of federal law."  Graham Decl. ¶ 55.  TECS records include wanted persons and fugitives, known and suspected violators of laws under the BATFE's jurisdiction, felons and dishonorably discharged veterans who request permission to possess firearms, violent felons, gangs, and terrorists.  *Id.* ¶ 56.  The TECS database includes, among other things, the names of individuals the BATFE has investigated.  *Id.*

A TECS query using plaintiff's name as a search term indicated that there were responsive records in the Atlanta Field Division under Criminal Investigation Number 771015-01-0005. Graham Decl. ¶ 57. In addition, BATFE staff searched for records pertaining to policies and procedures for collecting crime scene evidence at the Federal Law Enforcement Training Center in Glynco, Georgia. *Id*. ¶ 59. The outcome of this search is not stated in the declaration.

Plaintiff finds fault with the agency's declarant offering "second hand, hearsay testimony as to the adequacey [sic] of the search." Plaintiff's Motion Opposing Defendants' Motion for Summary Judgment, Declaration of Jeffrey J. Masters, Jr., the Requester/Plaintiff in the Above Action ("Pl.'s Opp.") ¶ 147. Although relevant records were located at the BATFE's Atlanta, Georgia field office, defendants do not submit "an affidavit [] by any agent or personell [sic] in the Atlanta field office." *Id.* Plaintiff's challenge to the adequacy of the search on this ground must fail. The declaration of a person responsible for supervising a FOIA search is sufficient. *See Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994); *Maynard v. Cent. Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993). Furthermore, "declarations accounting for searches of documents that contain hearsay are acceptable." *Kay v. Fed. Commc'n Comm'n*, 797 F.Supp. 23, 33 n.29 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) (table).

Next, plaintiff contends that the search "has not produced pictures maintained by that office that are attached to this Plaintiff's motion, nor any coppies [sic] of the evidence labels being preserved in the Atlanta office." Pl.'s Opp. ¶ 148. He suggests, then, that the BATFE still maintains this information and wrongfully withholds it.

The BATFE's search may not meet plaintiff's expectations. However, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.*, 844 F.Supp. 770, 777 n.4 (D.D.C. 1993) (the search, not the results of the search, must be reasonable). An agency's search is not presumed unreasonable because it fails to find all relevant material. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d at 551 (question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate").

The FOIA requires the agency to release records that it creates or obtains and that are under its control at the time the FOIA request is made. *See Katz v. Nat'l Archives & Records Admin.*, 68 F.3d 1438, 1440 (D.C. Cir. 1995) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989)). No agency is required to produce records that it does not possess. *See Rothschild v. Dep't of Energy*, 6 F.Supp. 2d 38, 40 (D.D.C. 1998). Plaintiff's conjecture as to the existence of additional responsive records does not satisfy his evidentiary burden, which requires that he present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Cent. Intelligence Agency*, 986 F.2d at 560; *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).

Plaintiff's final challenge to the adequacy of the BATFE's search is more convincing. He asserts that the BATFE "did not search for the requested training materials and procedures that BATF personnel must follow in the collection and preservation of evidence at the crime scene." *Id.* ¶ 149. It appears that BATFE staff did search for "records . . . pertaining to policies and

procedures for collecting crime scene evidence" at the Federal Law Enforcement Training Center and the BATFE's searchable database of briefs, orders, and handbooks for relevant policy information.  Graham Decl. ¶ 59.  The declarant neither describes these searches further, nor states the outcome of each search.  In this respect, the BATFE does not demonstrate that its search for responsive records is adequate.  The Court will deny defendants' motion in part on this ground, and will defer consideration of the applicability of Exemptions 2 and 7(E) with respect to this information.

### C.  *Exemptions*

#### 1.  Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  It applies to two categories of material: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *see Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d. 1051, 1073-74 (D.C. Cir. 1981).  Generally, courts limit Exemption 2 protection to "trivial administrative matters of no genuine public interest" ("low 2" exempt information), and to information that, if disclosed, "may risk circumvention of agency regulation" ("high 2" exempt information).  *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1206 (D.C. Cir. 1992); *see Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).

The BATFE invokes Exemption 2 to withhold "data displayed on screen prints of TECS

records." Graham Decl. ¶ 21 & *Vaughn* Index (Nos. 6-14, 155-56, 172-73, 209).[5] The printouts are redacted so that "computer literate individuals with mainframe knowledge" do not see the terminal from which a query was made and the route by which the displayed record was retrieved. *Id.* Release of this information "could provide information on the structure of the mainframe system [] and expose the system to circumvention," and "could facilitate unauthorized access to TECS and interfere with investigations and law enforcement activities at all levels." *Id.* Defendants thus demonstrate that their decision to redact these computer codes is proper under Exemption 2 as "high 2" exempt material. *See, e.g., Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F.Supp.2d 41, 45 (D.D.C. 2001); *Kuffel v. U.S. Bureau of Prisons*, 882 F.Supp. 1116, 1123 (D.D.C. 1995); *Fiumara v. Higgins*, 572 F.Supp. 1093, 1101-02 (D.N.H. 1983).

### 2. Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3).

#### a. Firearms Trace System Database

The Consolidated Appropriations Act of 2005, Pub. L. No. 108-447, 118 Stat. 2809, in relevant part provides:

> That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace

---

[5] Exemption 2 also is cited with respect to an ATF Laboratory Report dated March 7, 2002. *See Vaughn* Index, Nos. 196-98. The stated justification for withholding these records does not address Exemption 2, however.

> Center of the Bureau of Alcohol, Tobacco, Firearms, and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section 923(g), to anyone other than a Federal, State, or local law enforcement agency or a prosecutor solely in connection with and for use in a bona fide criminal investigation or prosecution.

*Id.* Information responsive to plaintiff's FOIA request includes material "wholly derived from either the contents of the Firearms Trace System Database . . . or information required to be kept by a [Federal Firearms Licensee] pursuant to 18 U.S.C. [§] 922(g)." Graham Decl. ¶ 23. Through the Consolidated Appropriations Act, Congress expressly prohibits disclosure of information in the Firearms Trace System Database and information maintained pursuant to 18 U.S.C. § 922(g). The BATFE properly withholds this information under Exemption 3. *See Watkins v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 04cv800 (GK), 2005 WL 2334277, *1 (D.D.C. Sept,. 1, 2005) (concluding that 2005 appropriations legislation "prevent[s] the public release of sensitive firearms trace data not so much for budgetary reasons than out of concern that such disclosures could jeopardize criminal investigations").

### b. Grand Jury Material

The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir.), *cert. denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998). Rule 6(e) is a statute for purposes of Exemption 3 because Congress affirmatively enacted it. *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,* 656 F.2d 856, 867-68 (D.C. Cir. 1981). While acknowledging the existence of a "grand jury exception" to the general disclosure requirements of FOIA, the Court of Appeals for the District of Columbia

Circuit has limited the exception to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

Under Exemption 3, the BATFE withholds grand jury subpoenas, reports and evidence obtained by grand jury subpoena, and Reports of Investigation containing grand jury information. Graham Decl. ¶ 24; *Vaughn* Index, Nos. 2-5, 101-03,108-09, 132, 139, 157, 159, 199-200. Disclosure of this information, which includes investigative techniques and identifies of potential witnesses, "would reveal the protected inner workings of Grand Jury proceedings, including, most significantly, the substance of the Grand Jury's investigation and the evidence it considered." Graham Decl. ¶ 29. The BATFE's decision to withhold these grand jury materials is proper under Exemption 3.

### 3. Exemption 6

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Information that applies to a particular individual meets the threshold requirement for Exemption 6 protection. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 602 (1982). The exemption requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976); *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).

The BATFE invokes Exemption 6 in conjunction with Exemption 7(C) to withhold in full the resume of a staff DNA analyst and a Special Agent's statement of qualifications. *See Vaughn Index*, Nos. 99-100, 115. The Court concludes that all this information properly is withheld under Exemption 6, as it pertains to particular individuals and "is unlikely to add to the public's understanding of how an agency works or how well it performs its duties." Graham Decl. ¶ 36.

### 4. Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

The BATFE "is a criminal and regulatory enforcement agency . . . and is responsible for, among other things, enforcing Federal firearms laws . . . and Federal explosives laws." Graham Decl. ¶ 30. The declarant explains that records at issue "were compiled in connection with an investigation into violations of various firearms crimes, which led to plaintiff's eventual conviction." *Id*. ¶ 35. Defendants, then, shows that the relevant records include law enforcement

records for purposes of Exemption 7.

### a. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).

### *i.* Law Enforcement Officers

The BATFE withholds the "identities of ATF Special Agents, other ATF law enforcement personnel such as supervisory and technical personnel who were involved in law enforcement operations, and state and local law enforcement personnel." Graham Decl. ¶ 41. These law enforcement personnel could face "harassment or even physical danger" if their identities are disclosed to "subjects of ATF investigations [who] hold grudges against the law enforcement personnel that apprehend them." *Id.* They also "may become the target of harassing phone calls if their phone numbers are released," which in turn would "interfere with official ATF business." *Id.* Similarly, disclosure of the identities of support personnel "could cause

13

them to become the subjects of harassing inquiries for unauthorized access to sensitive information." *Id.*

Redaction of the names of federal, state and local law enforcement personnel under similar circumstances routinely is upheld. *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding legitimate interest in preserving the identities of government officials where disclosure could subject them to annoyance or harassment in either their official or private lives); *Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995) (finding that "animosity or grudges toward special agents" resulting from release of information outweighed any possible benefit from disclosure), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).

### ii. Third Parties

Third parties referenced in the relevant files and the identities of third parties who were investigated by the BATFE also are withheld under Exemption 7(C). Graham Decl. ¶¶ 33, 38-40. This exemption recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-775; *SafeCard Servs., Inc. v. Securities & Exch. Comm'n*, 926 F.2d at 1205-06. Disclosure of this information could reasonably be expected to embarrass or humiliate these third parties by connecting them with a criminal investigation. Graham Decl. ¶ 39. Further, disclosure "has the very real potential to endanger such witnesses or cause harassment and harm to the witness' [sic] lives and reputations." *Id.* These same potential harms await third parties whom the BATFE investigated. *Id.* ¶ 40.

In balancing the recognized privacy interests at stake against the public interest in disclosure, the BATFE concluded that the third parties' privacy interest prevail. Graham Decl. ¶ 36. Release of the names of and identifying information about the law enforcement personnel and other third parties "is unlikely to add to the public's understanding of how an agency works or how well it performs its duties." *Id.* Accordingly, the BATFE properly withheld this information under Exemption 7(C). *See, e.g., Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *SafeCard Servs., Inc. v. Securites & Exch. Comm'n*, 926 F.2d at 1206 (holding that "names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) [are] exempt from disclosure").

Plaintiff suggests that there was "misfeasances in the agency[']s investigation. Especially in their handling [sic] of the evidence." Declaration of Jeffrey J. Masters, Jr., the Requester/Plaintiff in the Above Action ("Pl.'s Decl.") ¶ 4. He claims that evidence was altered or destroyed, that the agency failed to investigate another suspect, that potentially exculpatory evidence disappeared, and that agents presented false testimony before the grand jury. *See id.*, ¶¶ 142-46. Such speculation as to agency misconduct does not justify disclosure of information pertaining to third parties. The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." *Davis v. U.S. Dep't of Justice*, 968 F.2d at 1282. Plaintiff demonstrates no such public interest, and offers no

compelling evidence of illegal activity at the agency.

### *iii.* Personnel Files of Special Agents

If an individual is the target of a FOIA request, the agency to which the FOIA request is submitted may provide a "Glomar" response, refusing to confirm or deny the existence of records or information responsive to the request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy. *Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976) (CIA refused to confirm or deny existence of secret vessel, the "Glomar Explorer"); *see Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995). The BATFE provides such a response with respect to plaintiff's request for information about alleged misconduct by Special Agents because plaintiff did not provide their privacy waivers. Graham Decl. ¶ 42. The declarant explains that "files regarding employee misconduct are collected and maintained by ATF's Office of Professional Responsibility and Security Operations," the entity responsible for conducting "internal investigations into alleged acts of misconduct." *Id.* As plaintiff notes, *see* Pl.'s Decl. ¶ 188, defendants do not provide sufficient justification for concluding that such personnel files are law enforcement records to which Exemption 7(C) applies.

### b. Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal

investigation . . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no assumption that a source is confidential for purposes of Exemption 7(D) simply because the source provided information to a law enforcement agency in the course of a criminal investigation. *See U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *U.S. Dep't of Justice v. Landano*, 508 U.S. at 170-74). "[T]he question is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. at 172 (emphasis in original). This determination is made on a case-by-case basis. *Id.* at 179-80.

The BATFE withholds under Exemption 7(D) information pertaining to an interview of a third party and a third party's affidavit. *See Vaughn* Index, Nos. 45-45a, 105. The declarant explains that "violations of the Federal firearms law often consist of, or are accompanied by acts of violence, and that individuals who provide information concerning these crimes face a very real possibility of violent reprisal." Graham Decl. ¶ 47. Because plaintiff was charged with various firearms offenses and "was convicted of possession of an unregistered destructive device which discharged in his ex-girlfriend's car," the BATFE concludes that disclosure of this information "could place the [interviewee and affiant] in danger." *Id.* Under these circumstances, it is reasonable to assume that each individual cooperated with BATFE agents with the understanding that his or her identity would remain confidential. It is proper for the

BATFE to withhold this information under Exemption 7(D).

### c. Exemption 7(E)

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). Information properly withheld under this exemption must meet a two-part test: (1) the document or information was "compiled for law enforcement purposes," and (2) the release of the information "could reasonably be expected to risk circumvention of the law." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. at 622. If the test is met, the exemption provides categorical protection to information related to law enforcement techniques. *Fisher v. U.S. Dep't of Justice*, 772 F.Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992) (table). "[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F.Supp.2d 146, 181 (D.D.C. 2004) (citing *Coleman v. Fed. Bureau of Investigation*, 13 F.Supp.2d 75, 83 (D.D.C. 1998)). In some cases it is not possible to describe secret law enforcement techniques without disclosing the very information withheld. *See, e.g., Nat'l Security Archive v. Fed. Bureau of Investigation*, 759 F.Supp. 872, 885 (D.D.C. 1991). The agency is not excused, however, from providing the Court with information sufficient for it to decide whether the information is properly withheld under Exemption 7(E). *See id.*

The BATFE withholds "details of electronic surveillance techniques that are not widely

known to the public, specifically, the circumstances under which the techniques were used, the specific timing of their use, and the specific location where they were employed." Graham Decl. ¶ 52; *see Vaughn* Index, No. 191.  Disclosure of these details means disclosure of the BATFE's strategy in using these techniques, thus decreasing their effectiveness in future investigations.  *Id.* Defendants adequately justify their decision to withhold information pertaining to electronic surveillance techniques.

Plaintiff asserts that the techniques at issue, "GPS tracking and 'pulling the cell tower' or triangulating the possition [sic] to lacate [sic] the target from his phone," is common knowledge. Pl.'s Decl. ¶ 158.  Because the public is aware of such techniques and BATFE agents testified before the grand jury about these techniques, he contends that the information cannot be withheld under Exemption 7(E).  *Id.* ¶¶ 159-61.  His argument is not persuasive, however, as he merely speculates without offering any evidence in support.  *See, e.g., Maydak v. U.S. Dep't of Justice*, 362 F.Supp.2d 316, 320 (D.D.C. 2005) (plaintiff's assertion, without supporting evidence, that techniques on how agencies investigate incidents occurring within federal correctional facility, including collection of escape information, are known to inmates does not show genuine issue of material fact).

### III.  CONCLUSION

Defendants demonstrate the adequacy of their search for the criminal investigative records plaintiff sought, except the search pertaining to procedures or training materials for collecting and preserving evidence, for records responsive to plaintiff's FOIA request.  In addition, defendants demonstrate that they properly withheld certain information under Exemptions 2, 3, 6, 7(C), 7(D) and 7(E).  Defendants may renew their summary judgment motion

with respect to: (1) the adequacy of its search for policies, procedures or training materials for collecting and preserving evidence, (2) the applicability of Exemptions 2 and 7(E) to this information, and (3) the appropriateness of a "Glomar" response regarding the existence of disciplinary records regarding certain BATFE Special Agents. The Court defers consideration of segregability pending review of defendants' renewed summary judgment motion.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment [Dkt. #22] is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE. It is further

ORDERED that defendants shall file their renewed motion for summary judgment within 45 days of entry of this Memorandum Opinion and Order.

SO ORDERED.

Date: September 25, 2006                    /s/
                                            JOHN GARRETT PENN
                                            United States District Judge